

# In the
# Missouri Court of Appeals
## Eastern District

| | |
|---|---|
| EVITA TOLU, | ) |
| | ) |
| Appellant, | ) ED109721 |
| | ) |
| v. | ) OPINION FILED: |
| | ) December 28, 2021 |
| JAMES REID, PH.D., JAMES REID, | ) |
| PH.D., LLC, JENNIFER WEBBE VAN | ) Appeal from the Circuit Court |
| LUVEN, FITZGIBBONS | ) of the City of St. Louis |
| PSYCHOLOGICAL ASSOCIATES, | ) |
| AND ELAINE PUDLOWSKI, | ) Hon. Steven R. Ohmer |
| | ) |
| Respondents. | ) |

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary W. Lynch, Judge and W. Douglas Thomson, Judge

Evita Tolu appeals the entry of a judgment granting motions to dismiss all claims she asserted against defendants James Reid Ph.D., James Reid, Ph.D., LLC, Jennifer Webbe Van Luven, Fitzgibbons Psychological Associates, Inc. d/b/a West County Psychological Associates, and Elaine Pudlowski. Finding no error, we affirm.

## Factual and Procedural Background[1]

Evita Tolu ("Tolu") and Robert Stientjes ("Stientjes") married on April 3, 2002. Two children were born of the marriage. Child A was born in 2002 and Child T was born in 2004 (periodically referred to as "Children"). Tolu filed for dissolution of the marriage in July 2016 in the Circuit Court of St. Louis County, Case No. 16SL-DR04088. The dissolution was granted on October 4, 2016, pursuant to an agreement between the parties. The parties were awarded joint legal and physical custody of Child A and Child T, then ages 14 and 13, respectively.

Tolu filed a child custody modification proceeding in August 2017 in the Circuit Court of St. Louis County, Case No. 16SL-DR04088-01.[2] On August 30, 2017, the court in the child custody modification proceeding, (hereinafter referred to as the "family court"), appointed Elaine Pudlowski ("Pudlowski") to serve as guardian ad litem for Child A and Child T pursuant to a written order that described in express detail the guardian ad litem's court ordered duties and functions.

Tolu alleges that on October 3, 2017, Stientjes filed a motion asking the family court to require Tolu to submit to a psychological evaluation. Tolu alleges that she subsequently asked the family court to require Stientjes, Child A, and Child T to submit to psychological evaluations. Tolu alleges that on October 26, 2017, Pudlowski asked the family court to

---

[1]Because this appeal is from the grant of a motion to dismiss, we draw the relevant factual and procedural history from the factual assertions in the dismissed first amended petition and the exhibits attached thereto, as we are required to assume all facts alleged in the petition are true. *G.B. v. Crossroads Acad.-Cent. St.*, 618 S.W.3d 581, 588 (Mo. App. W.D. 2020) (holding that in reviewing the grant of a motion to dismiss we "accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader" (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012))); Rule 55.12 (which provides that "[a]n exhibit to a pleading is a part thereof for all purposes").

[2]The child custody modification proceeding is not the case from which the instant appeal has been taken.

2

appoint James Reid Ph.D. ("Dr. Reid") as an independent psychological expert to evaluate the mental health of all of the parties.

On October 26, 2017, the family court entered a Psychological Evaluation Order appointing Dr. Reid, a Missouri licensed psychologist, to evaluate the psychological status of Tolu, Stientjes, Child A, and Child T. The Psychological Evaluation Order stated that it was entered "[p]ursuant to Missouri Supreme Court Rule 60.01," but did not refer to, or purport to grant, any parties' motion seeking to require another party to submit to a mental examination. The Psychological Evaluation Order provided that the purpose of Dr. Reid's evaluations was "to assess any allegations or issues regarding [the] current mental health [of Tolu, Stientjes and the Children] and the parenting ability of each parent specific to this case bearing on the best interests of the children." The Psychological Evaluation Order provided that Dr. Reid was being appointed as "a forensic psychological expert, not a mediator, [sic] parenting coordinator psychotherapist," and that "[n]o psychotherapist-patient relationship is created by this appointment," as those ordered to be evaluated "are not patients of [Dr. Reid] and do not acquire the rights of patients by their participation in the evaluation." The Psychological Evaluation Order directed that should Dr. Reid's report "not address all relevant issues before the [family court]," then "this Court retains jurisdiction to order further evaluation to provide such additional information as the [family court] may deem appropriate." The Psychological Evaluation Order required Dr. Reid to give Tolu and Stientjes "a written explanation of the evaluation process and . . . a written explanation of [his] fee policies." The Psychological Evaluation Order was signed by Tolu, Tolu's attorney, Stientjes, Stientjes's attorney, and Pudlowski.

3

Dr. Reid provided Tolu with a written Statement of Understanding ("SOU") dated November 7, 2017, explaining the evaluation process and his fee policies. Tolu signed the SOU on November 10, 2017. The SOU indicated that Dr. Reid's professional services were being provided through a limited liability company known as James D. Reid Ph.D., LLC ("Reid LLC"). Among other things, the SOU acknowledged that Dr. Reid had been appointed by the family court pursuant to the Psychological Evaluation Order, and provided that "unless the order from the court explicitly states otherwise, the [family] court is to be considered the client of Dr. Reid." Tolu also signed an Informed Assent on November 10, 2017, at Dr. Reid's request. The Informed Assent provided that Dr. Reid's role was that of a forensic psychologist; that Dr. Reid was not Tolu's therapist or counselor; that Tolu was not Dr. Reid's patient; that there was no guarantee Dr. Reid's report would support Tolu's legal position; and that there is no psychologist-patient privilege or confidentiality in a forensic psychological evaluation.

Dr. Reid met with Tolu, Stientjes, Child A, and Child T on several occasions. He conducted psychological testing and interviewed persons identified as witnesses by Tolu and Stientjes before issuing his report. Pudlowski filed a motion to limit release of Dr. Reid's report on March 28, 2018. Dr. Reid's report was released to Pudlowski on April 3, 2018 as permitted by the Psychological Evaluation Order. On April 5, 2018, the family court entered an order limiting further release of Dr. Reid's report. The order provided that Dr. Reid could release his report only to Pudlowski; that Pudlowski could release Dr. Reid's report to the attorneys of record; that the attorneys of record could only share the report with their staff and experts retained for the custody litigation but could not further release

4

the report; that Tolu and Stientjes could view the report at the office of their attorney of record but were not allowed to receive a copy of the report; and that no one, including Tolu and Stientjes, could discuss the report with, or provide a copy of all or any portion of the report to, the Children.

Tolu objected to Dr. Reid's report in part because it included child custody recommendations. Tolu's motion to strike child custody recommendations contained in Dr. Reid's report was granted by the family court by order dated April 24, 2018.

In that same order, the family court granted Stientjes's motion for reunification counseling for the Children, and ordered Pudlowski to choose a therapist for that purpose. In a later order dated May 25, 2018, the family court directed Pudlowski to "determine whether Family Forward or other counseling agency is available at less cost for the reunification therapy previously ordered by the Court." The family court further ordered that Tolu and Stientjes "shall each pay fifty percent (50%) of said therapy and the therapist shall be given Dr. Reid's report."

Pudlowski chose Jennifer Webbe Van Luven ("Van Luven") to provide the court ordered reunification therapy for the Children. Van Luven is a licensed clinical social worker, and was an assistant director with Fitzgibbons Psychological Associates, Inc. d/b/a West County Psychological Associates ("WCPA").

Van Luven began reunification therapy with Child A, with Stientjes's assistance. On August 23, 2018, at Pudlowski's request, Tolu met with Van Luven and filled out intake forms, signed releases and a fee agreement, and signed a notice of privacy rights, so Van Luven could begin reunification therapy with Child T. Van Luven told Tolu during this

5

meeting that she had received, but not yet read, Dr. Reid's report. Tolu told Van Luven not to read Dr. Reid's report. Tolu shared with Van Luven specifics about findings and conclusions in Dr. Reid's report that she contested, and told Van Luven that she had filed several motions to secure all of Dr. Reid's records. Tolu told Van Luven that she had retained her own expert witness who had formed the opinion that Dr. Reid did not meet the standard of care in conducting his evaluations and documenting his findings.

Pudlowski prepared a proposed order identifying Van Luven as the reunification therapist she had selected for Child A and Child T, though that order was not signed by the family court. However, the family court did enter an order addressing authorized therapy on September 17, 2018. The September 17, 2018 order provided that "[Child T] and [Child A] shall *continue to work on reestablishing their relationship by continuing to meet with [Van Luven] for joint therapy*." (Emphasis added.) The September 17, 2018 order also provided that "[Child A] and [Tolu] shall begin therapy with Andrew M. Churcharillo or Erika Ottolini, to be determined by [Pudlowski]," and that "[Child T] and [Stientjes] shall begin therapy with Andrew M. Churcharillo or Erika Ottolini, to be determined by [Pudlowski]." The order provided that "[t]he goal of the above listed therapy is primarily to focus on reestablishing the relationship between [Child T] and [Child A]; the secondary goal is to reestablish the relationships between the children and the parents."[3] The order provided that "[a]ll parties are to sign releases to allow [Pudlowski] to speak w/ all

[3] In addition to the court ordered reunification therapy for the Children with Van Luven, and for each parent and a child with whom the relationship was strained with either Andrew M. Churcharillo or Erika Ottolini, the September 17, 2018 order authorized the parents and Children to continue individual therapy with therapists they had selected.

6

necessary therapists & therapists to speak w/ each other." The order directed Pudlowski to confirm her choice of a family reunification therapist as between Andrew M. Churcharillo ("Churcharillo") or Erika Ottolini ("Ottolini") by September 19, 2018 at 5:00 p.m. Finally, the order provided that the ordered or authorized therapy therein addressed was for the purpose of reunifying the family and improving relationships within the family, and that "it is the intention of the Court to not allow the family therapist(s) to testify as to the substance of the therapy provided and for them not to be called for litigation purposes."

Pursuant to the September 17, 2018 order, Pudlowski chose Ottolini to provide family therapy for Tolu and Child A, and family therapy for Stientjes and Child T. Tolu verbally consented to Pudlowski's release of Dr. Reid's report to Ottolini, though she claims she did so under duress.

Tolu became dissatisfied with Van Luven. Tolu contacted Pudlowski about her concerns with Van Luven, but contends the concerns were not addressed.

On September 10, 2020, Tolu filed the lawsuit giving rise to this appeal against Dr. Reid, Reid LLC, Van Luven, WCPA, and Pudlowski in the Circuit Court of St. Louis County. In a first amended petition filed on December 4, 2020, Tolu alleged claims for breach of the standard of care against Dr. Reid and Reid LLC (Count I); for breach of contract against Dr. Reid and Reid LLC (Count II); for constructive fraud and/or breach of fiduciary duty against Pudlowski (Count III); for breach of the standard of care against Van Luven and WCPA (Count IV); for constructive fraud and/or breach of fiduciary duty against Van Luven and WCPA (Count V); and for violation of the Missouri Merchandising

7

Practices Act ("MMPA")[4] against all of the defendants (Count VI). All of Tolu's claims arise out of alleged acts or omissions of the defendants in the child custody modification proceeding.[5]

The defendants each filed motions to dismiss the claims asserted against them. After a hearing on the motions to dismiss, the trial court entered its order and judgment dated June 4, 2021 ("Judgment") granting the defendants' motions to dismiss the first amended petition.

Tolu files this timely appeal.

## I.

### Finality of the Judgment for Purposes of Appeal

"This Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (citation omitted). "A final judgment is a prerequisite to appellate review." *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012).

"The general rule is that '[a] dismissal failing to indicate that it is with prejudice is deemed to be without prejudice.'" *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 530 (Mo. App. E.D. 2011) (quoting *Atkins v. Jester*, 309 S.W.3d 418, 422-23 (Mo. App. S.D. 2010)). The Judgment failed to indicate whether dismissal of Tolu's first

---

[4]Chapter 407. For reasons explained in this Opinion, all references to the MMPA are to the version in effect after amendments in 2020.

[5]Although the disposition of Tolu's child custody modification proceeding is not addressed in Tolu's amended petition, Tolu's counsel advised at oral argument that the case was resolved by consent, resulting in the entry of an agreed upon judgment.

amended petition was with or without prejudice. Thus, the dismissal is deemed to be without prejudice.

"The general rule is that a dismissal without prejudice is not a final judgment and, therefore, not appealable." *Siebert v. Peoples Bank*, 632 S.W.3d 461, 465 (Mo. App. S.D. 2021) (quoting *Doe v. Visionaire Corp.*, 13 S.W.3d 674, 676 (Mo. App. E.D. 2000)). A recognized exception to this general rule exists, however, "[w]hen the effect of the trial court's ruling is to dismiss a plaintiff's action and not merely the pleading." *Id.* (citing *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991)). In other words, "if the dismissal was such that refiling of the petition at that time would have been a futile act, then the order of dismissal is appealable." *Id.* (citing *Nicholson v. Nicholson*, 685 S.W.2d 588, 589 (Mo. App. E.D. 1985)).

As we explain in this Opinion, the Judgment dismissed the amended petition on grounds that cannot be addressed by refiling and repleading Tolu's claims. Therefore, the Judgment is final and appealable. *Id.* at 465-66. "Accordingly, we address the merits of [Tolu's] appeal." *Id.* at 466.

## II.

## Standard of Review

"The standard of review for a trial court's grant of a motion to dismiss is *de novo.* *Lang v. Goldsworthy*, 470 S.W.3d 748, 750 (Mo. banc 2015) (citing *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008)). "In determining the appropriateness of the trial court's dismissal of a petition, an appellate court reviews the grounds raised in the defendant's motion to dismiss." *Id.* (citation omitted). "If the motion to dismiss cannot be sustained

on any ground alleged in the motion, the trial court's ruling will be reversed." *Id.* (citation omitted).

We "review[] the petition to determine whether the facts alleged by the plaintiff meet the elements of a recognized cause of action or of a cause of action that might be adopted in that case." *In re Estate of Austin*, 389 S.W.3d 168, 171 (Mo. banc 2013) (citation omitted). We "review[] the petition 'in an almost academic manner.'" *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011) (quoting *City of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010)). We "accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorable to the pleader." *G.B. v. Crossroads Acad.-Cent. St.*, 618 S.W.3d 581, 588 (Mo. App. W.D. 2020) (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012)). We "disregard conclusory allegations of fact and legal conclusions, neither of which can be considered by an appellate court in determining whether" a motion to dismiss was properly sustained. *Siebert*, 632 S.W.3d at 466. That is because "Missouri rules of civil procedure demand more than mere conclusions that the pleader alleges without supporting facts." *Hall v. Podleski*, 355 S.W.3d 570, 578 (Mo. App. S.D. 2011) (quotation omitted).

An appellate court will "consider exhibits attached to the petition as a part of the allegations" when it reviews a trial court's grant of a motion to dismiss. *Siebert*, 632 S.W.3d at 466 (citation omitted). *See* Rule 55.12 ("[a]n exhibit to a pleading is a part thereof for all purposes"). However, an appellate court "will not consider matters outside the pleadings." *City of Lake Saint Louis*, 324 S.W.3d at 759 (citation omitted).

10

## III.

## Summary of the Grounds Relied on by the Trial Court to Grant the Motions to Dismiss

The Judgment dismissed Count I against Dr. Reid and Reid LLC (breach of the standard of care) on the basis of quasi-judicial immunity.[6] The Judgment dismissed Count II against Dr. Reid and Reid LLC (breach of contract) because "it is clear from the face of the petition that [Tolu] did not bargain for any services with Dr. Reid and Dr. Reid did not obligate himself to provide any services to [Tolu]," in part because the SOU plainly stated that "the court is to be considered the client of Dr. Reid in this contract for his independent professional judgments." Alternatively, the Judgment dismissed Count II (breach of contract) because the amended petition alleged that Dr. Reid had an obligation "to act within the standard of care of a forensic psychologist," a claim that sounds in malpractice and is duplicative of Count I, which was dismissed on the basis of quasi-judicial immunity.

The Judgment dismissed Count III against Pudlowski (constructive fraud/breach of fiduciary duty) on the basis of quasi-judicial immunity, and because Pudlowski owed no fiduciary duty to Tolu.

---

[6]Quasi-judicial immunity has its origin, as we explain, *infra*, in the doctrine of judicial immunity. Judicial immunity is an affirmative defense. *Stalnacker v. Dolan*, 631 S.W.3d 658, 660 (Mo. App. S.D. 2021). Ordinarily, an "affirmative defense is a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Grellner v. Foremost Signature Ins. Co.*, 291 S.W.3d 351, 353 (Mo. App. E.D. 2009) (citation and internal quotation marks omitted). Notwithstanding, "a defendant may properly file a motion to dismiss . . . when it appears from the face of the petition that an affirmative defense is applicable." *Evans v. Empire Dist. Elec. Co.*, 346 S.W.3d 313, 317 (Mo. App. W.D. 2011) (citation omitted). Common examples of affirmative defenses raised and properly considered in a motion to dismiss because the defense is irrefutably established by the face of the petition include the statute of limitations and statutory or other immunities. *See, e.g., City of Lake Saint Louis*, 324 S.W.3d at 764 (statute of limitations); *Allen v. Titan Propane, LLC*, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016) (immunity).

The Judgment dismissed Count IV against Van Luven (breach of the standard of care) on the basis of quasi-judicial immunity. The Judgment dismissed Count V against Van Luven (constructive fraud/breach of fiduciary duty) because Tolu was not Van Luven's client or patient, and because Tolu alleged no facts supporting the finding of a fiduciary relationship. In addition, the Judgment found that Count V was merely a recharacterization of Count IV, which was dismissed on the basis of quasi-judicial immunity, because "a party may not clothe a medical malpractice claim as a claim of breach of fiduciary duty." The Judgment dismissed Counts IV and V against WCPA for the same reasons it dismissed said claims against Van Luven.

The Judgment dismissed Count VI (MMPA) against Dr. Reid, Reid LLC, Van Luven and WCPA because "[t]he 2020 amendments to the MMPA, which were in affect [sic] when [Tolu] filed her initial Petition in this matter, specifically prohibit plaintiffs from using the MMPA as a vehicle to bring claims that should be filed under Missouri's malpractice statute." The Judgment also dismissed Count VI against all of the defendants because the trial court found that Tolu did "not allege that the Defendants' unlawful practices caused her to enter into the transactions at issue. In fact, she alleges she was ordered by the Court to use the Defendants' services. The Court finds that the MMPA does not apply to [Tolu's] transactions with Defendants."

## IV.

## Summary of Tolu's Points on Appeal

12

Tolu raises six points on appeal alleging error in the dismissal of her amended petition.[7] Point One addresses the dismissal of claims against Pudlowski. Points Two and Three address the dismissal of claims against Dr. Reid. Points Four and Five address the dismissal of claims against Van Luven. Point Six addresses the dismissal of the MMPA claim against Pudlowski, Dr. Reid, and Van Luven.[8]

The trial court's dismissal of Count III against Pudlowski, Counts I and II against Dr. Reid, and Counts IV and V against Van Luven, relied in part on the doctrine of quasi-judicial immunity. We therefore collectively address Points One through Five by first determining whether dismissal of Counts I, II, III, IV and V of the amended petition was supported by the doctrine of quasi-judicial immunity, and if not, by an alternative basis

---

[7] Tolu's points relied on fail "to comply with Rule 84.04(d), which requires a point relied on to: (1) identify the ruling or action being challenged; (2) concisely state the legal reasons for the claim of reversible error; and (3) explain why, in the context of the case, those legal reasons support the claim of reversible error." *Estate of Allen*, 615 S.W.3d 851, 854 (Mo. App. E.D. 2020). Tolu's points relied on "fail to explain why the legal reasons for her claims of reversible error support her claims." *Id.* In addition, Tolu's points are multifarious. "Multifarious points relied on violate Rule 84.04(d) and preserve nothing for review." *Id.* (citation omitted).

The purpose of compliant points relied on is to "give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Hiner v. Hiner*, 573 S.W.3d 732, 735-36 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). Despite Tolu's noncompliant points relied on, we have elected, *ex gratia*, to review plainly discernible legal arguments raised in the points. *See Burgan v. Newman*, 618 S.W.3d 712, 714 (Mo. App. E.D. 2021) (holding that points on appeal that are not compliant with mandatory rules can be reviewed *ex gratia* when the "gist of an appellant's arguments" can be ascertained (citation and internal quotation marks omitted)).

However, we will not afford *ex gratia* review for arguments raised in the argument portion of Tolu's Brief that are not captured in the points relied on. *See* Rule 84.04(e) (requiring that the argument be limited to the errors included in the points relied on); *Campbell v. Union Pac. R.R. Co.*, 616 S.W.3d 451, 461 (Mo. App. W.D. 2020) (holding that claims of error raised in the argument portion of a brief but not encompassed in the associated point relied on will not be reviewed).

[8] None of Tolu's points on appeal claim error in the Judgment's dismissal of claims against Reid LLC or WCPA. Tolu has therefore failed to preserve any claim of error associated with dismissal of these corporate defendants. We recognize that Tolu's Statement of Jurisdiction in her Brief suggests that references to "Van Luven" refer to both Van Luven and WCPA, and that references to "Reid" refer to both Dr. Reid and Reid LLC. That is not sufficient to comply with Rule 84.04(d). The Judgment is therefore affirmed with respect to dismissal of all claims asserted in the first amended petition against Reid LLC and WCPA. We would reach the same conclusion even if Tolu's points on appeal were generously construed to include reference to Reid LLC and WCPA. Because Dr. Reid and Van Luven were properly dismissed, claims against their purported corporate employers were also properly dismissed.

13

relied on in the Judgment or raised in the motions to dismiss. We then address Point Six

challenging dismissal of the MMPA claim.

## V.

## The Doctrine of Quasi-Judicial Immunity

"Missouri has long recognized the doctrine of judicial immunity." *Stalnacker v.*

*Dolan*, 631 S.W.3d 658, 661 (Mo. App. S.D. 2021) (citing *Howe v. Brouse*, 427 S.W.2d

467, 468 (Mo. 1968)). "The doctrine of judicial immunity was 'solidly established at

common law," [and] adopted by the Supreme Court of the United States in *Bradley v.*

*Fisher*," 80 U.S. 335 (1871). *Howe*, 427 S.W.2d at 468.

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one [sic] who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. . . .
>
> The principle . . . which exempts judges of courts . . . from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any wellordered [sic] system of jurisprudence. . . .
>
> Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. . . .

*Bradley*, 80 U.S. at 347.

In its effect, judicial immunity operates to protect the exercise of judicial functions,

and not the office. *Westfall v. Erwin*, 484 U.S. 292, 296 n.3 (1988) ("[T]his Court[] has

long favored a 'functional' inquiry—immunity attaches to particular official functions, not

14

to particular offices."). The Missouri Supreme Court reinforced this point in *State ex rel. Raack v. Kohn*, 720 S.W.2d 941, 944 (Mo. banc 1986) by observing that "[j]udicial immunity exists 'not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, [in] whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Thus, the parameters of judicial immunity do not encompass every act by a judge, and extend only to the exercise of judicial functions. *See, e.g., Stalnacker*, 631 S.W.3d at 661-62 (observing a distinction between a judge's act in excess of authority but within the court's subject matter jurisdiction, and a judge's act wholly without subject matter jurisdiction, with only the former category being subject to judicial immunity) (citing *Howe*, 427 S.W.2d at 467); *Nelson v. McDaniel*, 865 S.W.2d 747, 748 (Mo. App. W.D. 1993) (holding that "a judge with subject matter jurisdiction has judicial immunity from all actions taken, even when acting in excess of his [authority]"); *Forrester v. White*, 484 U.S. 219, 232 (1988) (holding that a judge's termination of a probation officer pursuant to state statute was an administrative act and not a judicial function, and was outside the scope of judicial immunity); *Allsberry v. Flynn*, 628 S.W.3d 392, 398 (Mo. banc 2021) (holding that judicial immunity attaches to a judge's acts that constitute judicial or adjudicative functions but not to acts undertaken in a judge's administrative capacity).

Because judicial immunity attaches to the function, and not to the office, the United States Supreme Court has "extend[ed] absolute [judicial] immunity to various individuals whose adjudicatory functions or other involvement with the judicial process have been

15

deemed to warrant protection from harassment, intimidation or other interference with impartial decision making." *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 382 (Mo. App. E.D. 1993) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978); *Imbler v. Pachtman*, 424 U.S. 409 (1976)). As such, "[e]mploying [a] functional analysis, a number of federal and state courts have held various participants in judicial proceedings . . . absolutely immune from liability for the actions undertaken in performance of their roles as integral parts of the judicial process." *Id.* (citations omitted). When applied to individuals who are not judges, but who are providing a service that is tantamount to a judicial function, the common law doctrine of judicial immunity is referred to as quasi-judicial immunity.[9]

Extension of the common law doctrine of judicial immunity doctrine to non-judges is thus necessarily gauged against promotion of the policy rationale underlying the immunity. As such, common law quasi-judicial immunity should only be extended to those who are performing a judicial function, and whose "conduct of their official duties may adversely affect a wide variety of individuals, each of whom may be a potential source of future controversy," in order "to forestall an atmosphere of intimidation that would conflict with their resolve to perform their functions in a principled fashion." *Id.* at 383 (citations

---

[9]The Missouri Supreme Court tacitly recognized the common law doctrine of quasi-judicial immunity, albeit in a case noting that the absolute common law immunity is "subject to legislative modification." *Edwards v. Gerstein*, 237 S.W.3d 580, 581-82 (Mo. banc 2007) (holding that absolute quasi-judicial immunity was superseded by section 331.100.5, which extends qualified immunity to members of the Missouri Board of Chiropractic Examiners); *see also Avidan v. Transit Cas. Co.*, 20 S.W.3d 521, 524-25 (Mo. banc 2000) (addressing statutory judicial immunity for court appointed receivers).

omitted). Even then, quasi-judicial immunity only protects conduct within the scope of the judicial functions assigned. *Id.* at 386.

With this framework in mind, we turn to whether the doctrine of quasi-judicial immunity supports dismissal of the claims asserted against Pudlowski, Dr. Reid, and Van Luven, which is a question of law. 48A C.J.S. section 215 ("A determination of whether judicial immunity exists is a question of law.").

A.

**The claims asserted against Pudlowski were appropriately dismissed based on the doctrine of quasi-judicial immunity**

In *Bird*, the Eastern District addressed as a matter of first impression "whether the common law doctrine of judicial immunity may be invoked by individuals who are not judges." 864 S.W.2d at 382. After considering the important policies served by the doctrine of judicial immunity, and after engaging in the functional analysis endorsed by the United States Supreme Court, the Eastern District concluded "that the same policies that led the Missouri Supreme Court to recognize judicial immunity in *State ex rel. Raack v. Kohn* compel the extension of quasi-judicial immunity to *statutorily mandated* guardians ad litem in child custody proceedings." *Id.* at 385-86 (emphasis added). The court's rationale, which was borrowed from federal precedent, was as follows:

> Indeed, the need for an independent guardian ad litem is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash. Innocent children may be pawns in the conflict. To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what

17

is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents.

*Id.* at 386 (quoting *Short by Oosterhous v. Short*, 730 F. Supp. 1037, 1039 (D. Colo. 1990)).

Thus, although guardians ad litem in custody matters are technically appointed to serve as legal representatives to a child (*see* section 452.423.3), in fact "Missouri courts have consistently adhered to the traditional view that the guardian's principal allegiance is to the court. Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client." *Id.* at 385. As such, "the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance." *Id.* at 384.

> In essence, the guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the *ex parte* and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—*i.e.*, the "best interests of the child."

*Id.*

Tolu's first point on appeal alleges that it was error to dismiss claims against Pudlowski based on quasi-judicial immunity. Tolu does not challenge that Pudlowski is protected by quasi-judicial immunity as a court appointed guardian ad litem. Instead, Tolu argues that quasi-judicial immunity only attaches to conduct within the scope of a guardian ad litem's duties, and that a breach of fiduciary duty resulting from the release of protected

18

healthcare information ("PHI") is not within that scope.[10] Specifically, Tolu complains in the argument portion of her Brief that Pudlowski was not authorized to release Dr. Reid's report to Van Luven,[11] and that by releasing the report to Van Luven without authorization from Tolu or the trial court, Pudlowski breached a fiduciary duty, resulting in damages.

Tolu's amended petition identifies several family court orders addressing the release of Dr. Reid's report. Though Tolu contends that Pudlowski violated one or more of these family court orders, that allegation does not alter the fact that distribution of Dr. Reid's report was within the scope of Pudlowski's court ordered judicial functions, all of which were subject to the family court's "exclusive responsibility and authority to supervise and remove guardians ad litem [as] contemplated by sections 452.423.3 and 210.160.3." *Id.* at 386. Pudlowski's alleged failure to protect Dr. Reid's report from disclosure is not beyond the scope of her official duties. To the contrary:

> [I]n Missouri, permitting suits against guardians ad litem would be incompatible with the court's exclusive power of removal. The filing of the suit, irrespective of the merits of the contentions advanced, would instantly create a conflict of interest between the guardian and the child, thus necessitating withdrawal . . . . Thus, assuming standing exists, either parent or the child could accomplish indirectly what we have previously held they cannot accomplish directly—*i.e.,* removal of a guardian whose views of the child's best interests do not coincide with their own.

*Id.* (citation omitted).

---

[10]Though Tolu's first point on appeal speaks broadly to the dismissal of all claims asserted against Pudlowski, the argument portion of Tolu's Brief only addresses dismissal of Count III of the amended petition, the claim asserted for constructive fraud/breach of fiduciary duty.

[11]Although Tolu's first amended petition complains that Dr. Reid's report was also improperly released by Pudlowski to Ottolini, that contention is not addressed in Tolu's first point on appeal, and is therefore abandoned. Even if not abandoned, the contention is subject to quasi-judicial immunity for the same reasons applicable to Pudlowski's release of Dr. Reid's report to Van Luven.

19

Tolu spends considerable time addressing whether Pudlowski violated the Missouri Rules of Professional Conduct applicable to licensed attorneys, the Health Insurance Portability and Accountability Act ("HIPPA"),[12] and Guardian ad Litem Standards identified in the order appointing Pudlowski. Tolu's arguments miss the mark. The Rules of Professional Conduct, and other statutory or regulatory provisions applicable to Pudlowski's performance of her duties as a court appointed guardian ad litem, serve as "mechanisms in place to prevent abuse and misconduct," diffusing the concern that quasi-judicial immunity leaves non-judicial officers unaccountable for purported misconduct. *Bird*, 864 S.W.2d at 386. However, violations of rules, statutes or regulations applicable to conduct within the scope of duties subject to the immunity does not negate the immunity.[13] *See, e.g., Christofferson v. State, Court Custody Investigator's Office*, 242 P.3d 1032, 1035-36 (Alaska 2010) (holding that common law judicial immunity shields court ordered custody investigator from civil liability based on claims that she violated mandatory reporting duties imposed by statute); *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) (holding that absolute immunity attendant to quasi-judicial immunity is not affected by allegations of conspiracy). "An immunity is a freedom from suit or liability. The underlying premise of all immunities is that 'though the defendant might be a wrongdoer, social values of great importance require[d] that the defendant escape

---

[12]Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified primarily in Titles 18, 26, 29 and 42 of the United States Code).

[13]Moreover, we question whether an alleged violation of the Missouri Rules of Professional Conduct, HIPPA, or Guardian ad Litem Regulations would support a private right of action for damages against a guardian ad litem, even in the absence of quasi-judicial immunity. We need not resolve that issue, however.

liability.'" *Murphy v. A.A. Mathews, a Div. of CRS Group Eng'rs, Inc.*, 841 S.W.2d 671, 674 (Mo. banc 1992) (quoting Prosser and Keeton on Torts 1032 (5th ed. 1984)).

Tolu's allegation that Pudlowski committed constructive fraud and/or breached a fiduciary duty by releasing Dr. Reid's report to Van Luven "fall[s] squarely within the scope of [Pudlowski's] duties as court appointed guardian ad litem."[14] *Bird*, 864 S.W.2d at 386. Pudlowski, as guardian ad litem, is absolutely immune from civil liability for the conduct alleged in Tolu's amended petition based on the common law doctrine of quasi-judicial immunity.

The trial court's dismissal of Count III of the amended petition on the basis of quasi-judicial immunity is affirmed. Tolu's Point One is denied.

## B.

**The claims asserted against Dr. Reid were appropriately dismissed based on the doctrine of quasi-judicial immunity even though the family court did not have the authority to designate Dr. Reid as its independent mental health expert in a child custody proceeding**

In Tolu's second point on appeal, Tolu argues that it was error to dismiss claims against Dr. Reid because a court-appointed forensic psychologist is not entitled to quasi-

---

[14]Though Tolu's claim that Pudlowski released Dr. Reid's report to Van Luven without authority was properly dismissed based on quasi-judicial immunity, it is important to point out that Tolu's contention is negated by an exhibit attached to her amended petition. The family court's May 25, 2018 order, directed Pudlowski to "determine whether Family Forward *or other counseling agency* is available at less cost for the reunification therapy previously ordered by the Court." (Emphasis added.) In the same order, the family court directed that Tolu and Stientjes "shall each pay fifty percent (50%) of said therapy *and the therapist shall be given Dr. Reid's report*." (Emphasis added.) The therapist selected by Pudlowski was Van Luven. Tolu's Brief acknowledges the family court's May 25, 2018 order, but misrepresents that the order "allowed Pudlowski to release the [Dr.] Reid report only to Family Forward." During oral argument, Tolu relied on *State ex rel. Fennewald v. Joyce*, 533 S.W.3d 220 (Mo. banc 2017), to argue that the family court's May 25, 2018 order was not sufficiently specific to authorize the release of Dr. Reid's report to Van Luven. But *Fennewald* is not relevant as it addressed whether a medical authorization signed by a party was sufficiently specific to authorize the release of medical records. *Id. Fennewald* did not impose specificity requirements on court orders directing the release of medical reports prepared by a court-appointed independent expert. *Id.*

21

judicial immunity, and in any event, Dr. Reid acted outside the scope of quasi-judicial immunity by violating court orders.[15] Resolution of this point requires us to address whether the functional analysis employed in *Bird*, 864 S.W.2d at 385-86 supports extension of quasi-judicial immunity to court-appointed psychological evaluators, and whether the family court was authorized to delegate judicial functions to Dr. Reid as the court's independent expert.

In Tolu's third point on appeal, Tolu argues that it was error to dismiss claims against Dr. Reid because Dr. Reid's breach of the SOU and Informed Assent provide a separate basis for Tolu's claims. If we affirm the trial court's finding that Tolu's breach of contract claim against Dr. Reid was essentially duplicative of the breach of the standard of care claim, then our conclusion about the application of quasi-judicial immunity to Dr. Reid will control the resolution of Tolu's third point on appeal.

### i.

### *Functional analysis supports extension of quasi-judicial immunity to court-appointed psychological evaluators*

The family court appointed Dr. Reid to serve as the court's independent forensic evaluator, and directed Dr. Reid to "evaluate the psychological status of [Tolu] and [Stientjes], and their minor children" for the purpose of preparing a report that would offer opinions and recommendations intended to assist the family court in making its best interest determinations in the child custody modification proceeding. The family court's

---

[15]Though Tolu's second point on appeal speaks broadly to the dismissal of all claims asserted against Dr. Reid, the argument portion of Tolu's Brief only addresses dismissal of Count I of the amended petition, the claim asserted against Dr. Reid for breach of the standard of care.

22

Psychological Evaluation Order was purportedly entered "[p]ursuant to Missouri Supreme Court Rule 60.01."[16] The Psychological Evaluation Order expressly provided that "[t]he Evaluator is appointed as a forensic psychological expert . . . [and] [n]o psychotherapist-patient relationship is created by this appointment. The parties, children, household members and witnesses who participate in this evaluation are not patients of the Evaluator and do not acquire the rights of patients by their participation in the evaluation." The Psychological Evaluation Order provided that "[t]he Evaluator shall exercise his/her independent objective judgment in conducting the evaluation. The written report of the Evaluator may be received into evidence subject to the rights of cross-examination or motions to strike portions of the report for good cause. . . . Each party . . . retains the right to argue the issue of weight, sufficiency and reliability of [hearsay statements contained in the report]." The Psychological Evaluation Order also provided that should the Evaluator's report "not address all relevant issues before the Court," then the "Court retains jurisdiction to order further evaluation to provide such additional information as the Court may deem appropriate."

The extension of quasi-judicial immunity to a court-appointed forensic psychologist is an issue of first impression in the State of Missouri, though we are guided in our consideration of this issue by *Bird*, 864 S.W.2d 376. "With virtual uniformity, courts in other jurisdictions have granted quasi-judicial immunity to individuals who perform

---

[16]All Rule references are to *Missouri Court Rules, Vol. I — State, 2021* unless otherwise noted. We address, *infra*, whether the family court was authorized to appoint Dr. Reid as the court's independent expert pursuant to Rule 60.01.

functions analogous to those performed by [Dr. Reid] in the present case."[17] *Diehl v. Danuloff*, 618 N.W.2d 83, 88 (Mich. Ct. App. 2000). The rationale for extending quasi-judicial immunity to court-appointed psychological evaluators directed to serve as neutrals and to report their findings or recommendations to the court is essentially the same in each of these cases, but is particularly well-captured in *Parker v. Dodgion*, 971 P.2d 496 (Utah 1998), where the Utah Supreme Court applied a functional analysis to conclude:

---

[17]*Nave v. Feinberg*, 539 S.W.3d 685, 690-91 (Ky. Ct. App. 2017) (holding that court-appointed psychologist directed to conduct custodial evaluations in a dissolution proceeding was entitled to quasi-judicial immunity); *Christofferson v. State, Court Custody Investigator's Office*, 242 P.3d 1032, 1035-36 (Alaska 2010) (holding that a court-appointed custody investigator charged by court with investigating and preparing a custody report was entitled to quasi-judicial immunity); *Hathcock v. Barnes*, 25 P.3d 295, 297 (Okla. Civ. App. 2001) (holding that court-appointed psychologist directed to render an evaluation and make a custodial recommendation is performing a function integral to the judicial process and is entitled to quasi-judicial immunity); *Diehl v. Danuloff*, 618 N.W.2d 83, 90 (Mich. Ct. App. 2000) (holding that a "court appointed psychologist . . . ordered to conduct a psychological evaluation and submit a recommendation to the trial court in a custody proceeding is entitled to absolute quasi-judicial immunity"); *Duff v. Lewis*, 958 P.2d 82, 85-87 (Nev. 1998) (holding that a court-appointed psychologist who issued a report to the trial court in a child custody proceeding enjoyed quasi-judicial immunity); *Parker v. Dodgion*, 971 P.2d 496, 498-99 (Utah 1998) (holding that a psychologist appointed by the court to assist with custodial determination essentially acts as a neutral factfinder for the court, a judicial function that warrants extension of the doctrine of quasi-judicial immunity); *Delcourt v. Silverman*, 919 S.W.2d 777, 782-83 (Tex. App. 1996) (holding that court-appointed psychiatrist in child custody proceeding who was serving as officer of the court to assist judge in protecting interests of the children and who conducted interviews and evaluations as agent of the court was entitled to quasi-judicial immunity); *Lythgoe v. Guinn*, 884 P.2d 1085, 1088-89 (Alaska 1994) (holding that psychologists appointed by a trial court to perform custody evaluations for the court are an "arm of the court" serving an integral part of the judicial process, and are thus entitled to quasi-judicial immunity); *Muzingo v. St. Luke's Hosp.*, 518 N.W.2d 776, 777-78 (Iowa 1994) (holding that court-appointed psychiatrist directed to evaluate and render advisory opinion regarding a person's mental condition is acting as arm of the court and is entitled to quasi-judicial immunity); *Lavit v. Superior Court*, 839 P.2d 1141, 1145-46 (Ariz. Ct. App. 1992) (psychologist stipulated to by the parties, but appointed by the court to conduct independent evaluations and thus to serve as an expert for the court and not for either party in a child custody proceeding was entitled to quasi-judicial immunity); *S.T.J. v. P.M.*, 556 So. 2d 244, 247-48 (La. Ct. App. 1990) (holding that court-appointed psychologist in child custody proceeding was entitled to quasi-judicial immunity); *Myers Through Myers v. Price*, 463 N.W.2d 773, 776 (Minn. Ct. App. 1990) (noting that quasi-judicial immunity protection had been extended to court-appointed therapists for evaluations conducted of children suspected of having been abused); *Howard v. Drapkin*, 222 Cal. App. 3d 843, 903 (Cal. Ct. App. 1990) (holding that a psychologist engaged by the court to evaluate the parties in a child custody dispute is entitled to quasi-judicial immunity); *LaLonde v. Eissner*, 539 N.E.2d 538, 541 (Mass. 1989) (holding that "common law immunity protects persons appointed by a court to conduct a medical or psychiatric evaluation and render an opinion or to provide other expert assistance" to the court); *Moses v. Parwatikar*, 813 F.2d 891, 892-93 (8th Cir. 1987) (holding psychiatrist appointed to conduct competency examination in a criminal case was performing essential judicial functions and was entitled to quasi-judicial immunity despite defendant's claims of a conspiracy); *Miner v. Baker*, 638 F. Supp. 239, 240-41(E.D. Mo. 1986) (psychiatrist appointed by court pursuant to sections 552.020 and 552.030 to conduct pretrial evaluation and examination of criminal defendant "enjoys absolute immunity in his performance of the quasi-judicial function of court-appointed psychiatrist").

24

When a court appoints a psychologist to assist it in making a custody determination, the court is depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation. The exercise of discretionary judgment is a hallmark of a position functionally comparable to that of a judge. . . . Furthermore, in conducting such evaluations, the psychologist is essentially acting as a neutral fact-finder for the court. Fact-finding is an integral part of the judicial process and a function naturally associated with judges and juries, both of whom are granted immunity from suit.

In addition, courts that have addressed this issue have uniformly held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial process and are therefore immune from suit.

*Id.* at 498 (citations omitted). This rationale aligns with the functional analysis employed in *Bird* to extend quasi-judicial immunity to guardians ad litem. 864 S.W.2d at 385-86. In addition, the policies recognized in *Bird*, 864 S.W.2d at 385-86, that are served by extension of the common law doctrine of quasi-judicial immunity to guardians ad litem align with those served by extending the doctrine to court-appointed psychological evaluators, as noted in *Diehl*, 618 N.W.2d at 89:

The common law doctrine of absolute immunity extends to all persons who are an integral part of the judicial process. The purpose behind a grant of absolute immunity is to preserve the independent decision-making and truthfulness of critical judicial participants without subjecting them to the fear and apprehension that may result from a threat of personal liability. . . .

These policy reasons apply equally to court-appointed officials such as psychologists and psychiatrists who assist the court in making decisions. Without immunity, these professionals risk exposure to lawsuits whenever they perform quasi-judicial duties. Exposure to liability could deter their acceptance of court appointments or color their recommendations.

(quoting *Duff v. Lewis*, 958 P.2d 82, 85-86 (Nev. 1998)). Though in a criminal, and not a civil context, the Eighth Circuit has thus recognized the need to extend quasi-judicial

25

immunity to court-appointed psychologists or psychiatrists charged with providing neutral guidance to the court.

> Without absolute immunity two problems are likely to develop in cases such as this. First, psychiatrists will be reluctant to accept court appointments. . . . Second, the threat of civil liability may taint the psychiatrist's overall opinions. The disinterested objectivity, so necessary to an accurate competency determination, will be lost. In short, only by granting absolute immunity will the paths to the truth remain open.

*Moses*, 813 F.2d at 892 (citing *Briscoe*, 460 U.S. at 333).

Against this overwhelming weight of contrary authority, Tolu argues that a few jurisdictions have refused to extend quasi-judicial immunity to psychologists appointed by a court to conduct independent psychological evaluations in child custody proceedings. Tolu relies on five cases that do not hold as she suggests, and that are readily distinguishable.

In *Awai v. Kotin*, 872 P.2d 1332, 1333 (Colo. App. 1993), the court appointed a psychologist to evaluate a child in a child custody dispute, and to report back to the court. Based on this evaluation, the court appointed the same psychologist to provide therapy to the child and to both of the child's parents. *Id.* The child's father later sued the psychologist and his supervisor for negligence and breach of fiduciary duty, and "alleged that the treatment he had received from defendants was substandard." *Id.* at 1334. In addressing whether quasi-judicial immunity protected the psychologist and his supervisor from civil liability, the court found as follows:

> [I]mmunity is not established merely because a court appointee performed acts within the scope of the court's order. . . . [I]t is still necessary to establish that the acts performed were intimately related and essential to the judicial decision-making process. . . .

26

[T]reatment, unlike reports or evaluations and recommendations, is not intimately related and essential to the judicial decision-making process. Rather, it is a separate remedial function in which full disclosure may be contrary to the best interests of the patient and improper. . . .

[T]he focus of the psychologist in performing evaluations, providing reports, and making recommendations is not necessarily on the best interests of the subject being evaluated or any one of the parties involved in the litigation, but on aiding the court to separate truth from falsity. In contrast, the focus of the therapist in treatment is solely on the best interests of the patient. The need for absolute immunity for treatment is therefore not as compelling as the need for immunity for evaluations and recommendations. . . .

*Id.* at 1335-36 (citations omitted). In holding that father's court-appointed therapist and the therapist's supervisor had "not sustained their burden of showing that an exemption from liability for negligent treatment is justified," the court did *not* hold, as Tolu suggests, that court-appointed psychologists directed to conduct independent evaluations are ineligible for quasi-judicial immunity. To the contrary, *Awai* drew a careful and thoughtful distinction between court-appointed independent evaluators, and court-appointed treating therapists, and concluded the latter are not entitled to quasi-judicial immunity.

In *Cegalis v. Trauma Inst. & Child Trauma Inst.*, No. 2:19-cv-00153, 2020 WL 2079514, at *1-2 (D. Vt. Apr. 30, 2020), psychological professionals *privately* retained by a child's father to provide therapy to the child and to testify as experts in litigation concerning parental alienation were sued by the child's mother on a number of tort theories after they testified that the child should not be reunited with mother. Not surprisingly, the doctrine of quasi-judicial immunity was not addressed in this case, as the defendants were not court-appointed to serve as the court's independent experts.

27

In *Williamson v. Odyssey House, Inc.*, No. 99-561, 2000 WL 1745116, at *1-2 (D.N.H. Nov. 1, 2000), a child's guardian sued a residential care facility after the child attempted suicide. The child had been placed in the care facility by court order following the recommendation of a juvenile officer. *Id.* at *1. The care facility moved for summary judgment on the basis of judicial immunity. *Id.* at *2. The court denied the motion because even though court-appointed psychologists acting as an arm of the court are entitled to quasi-judicial immunity, "a factual dispute remains as to whether [the care facility] was acting in a quasi-judicial capacity while [the child] was a resident . . . . The facts of record suggest that [the child] was ordered to the placement at [the care facility], not that [the care facility] was serving as a court-appointed expert in her case." *Id.* Williamson does *not* hold, that a court-appointed psychologist directed to conduct an independent evaluation as the court's expert is ineligible for quasi-judicial immunity. To the contrary, just as in *Awai*, *Williamson* distinguished between court-appointed evaluators, and court-appointed treating therapists, finding the former to be immune and the latter not to be immune.

In *Politi v. Tyler*, 751 A.2d 788, 789-90 (Vt. 2000), a psychologist hired by parents to conduct a forensic evaluation of the parents and their child was sued for malpractice. The psychologist sought to dismiss the malpractice action on the basis of quasi-judicial immunity, claiming she was a court-appointed expert. *Id.* The Vermont Supreme Court concluded that the psychologist was "not a court appointed expert," and that the trial court "correctly decided that the duties imposed on [the psychologist] arose from her contract with the parties, not from a quasi-judicial function performed [for the court] pursuant to a family court order." *Id.* at 791.

28

Finally, Tolu relies on *Chambers v. Stern*, 994 S.W.2d 463, 464 (Ark. 1999), where a court-appointed physician "over a four-year period evaluated, [father and mother] and their children, engaged them in therapy, and reported his findings, observations, and recommendations" to the court. "Subsequently, [father] contended that [the court-appointed physician] committed malpractice during the therapy or 'treatment' phase with the family members." *Id.* "[T]he parties agree[d] that absolute judicial immunity extends to physicians appointed by courts to assist in 'evaluations.' However, the parties dispute[d] whether judicial immunity continues to shield the court-appointed physician when the evaluation phase progresses to treatment or therapy." *Id.* at 465. Ultimately, the court concluded that "[p]ublic policy considerations . . . compel us to extend judicial immunity to court-appointed therapists." *Id.* at 466. However, the court found that genuine issues of fact remained in dispute as to whether the physician "act[ed] within the scope of his court appointment," preventing the entry of summary judgment in favor of the therapist. *Id.* Once again, this case supports the conclusion that court-appointed independent psychological evaluators in child custody proceedings are entitled to quasi-judicial immunity.

The five cases Tolu relies on did not, as she argues, refuse to extend quasi-judicial immunity to court-appointed independent psychological evaluators, and instead support the contrary conclusion. In fact, we have not located a single decision that refuses to extend quasi-judicial immunity to a psychiatrist or psychologist duly appointed by a court to perform neutral evaluations to aid the court in its fact-finding judicial function.

Unphased, Tolu relies on *Murphy v. A.A. Mathews, a Div. of CRS Grp. Eng'rs, Inc.*, 841 S.W.2d 671 (Mo. banc 1992), to argue against extension of quasi-judicial immunity to Dr. Reid, and contends that *Murphy* stands for the proposition that a court-appointed expert may be sued for negligence in performing litigation related services. Tolu substantially distorts the holding in *Murphy*.

In *Murphy*, an engineering firm was hired by a construction subcontractor to document the subcontractor's claims for compensation in connection with an arbitration proceeding brought by the subcontractor against the general contractor. *Id.* at 672. After the arbitrator awarded the subcontractor less than 25% of the compensation the engineer testified should have been awarded, the subcontractor sued its retained engineer for professional malpractice. *Id.* The engineering firm asserted that the subcontractor failed to state a cause of action based on *witness* immunity, and the trial court agreed. *Id.* Our Supreme Court noted that "Missouri has recognized witness immunity," and that "[t]he immunity is one that is generally related to defamation actions against adverse witnesses." *Id.* at 674. The Supreme Court thus framed the issue as being required to "determine whether this [witness] immunity should be extended to bar malpractice claims against professionals hired to perform litigation support services." *Id.*

After a lengthy exploration of the policy rationale underlying the doctrine of witness immunity, the Supreme Court concluded:

> *Due to the hired expert witness' function*, we do not believe that the policy of ensuring frank and objective testimony is furthered by granting immunity. In most circumstances, these experts possess no independent factual knowledge concerning the litigation. Instead, they are usually *retained to assist a party* in preparing and presenting its best case in exchange for a fee.

30

In practice, *they function as professionals selling their expert services rather than as an unbiased court servant.* Thus, immunizing an expert retained and compensated for providing litigation support services does not advance this underlying policy.

*Id.* at 681 (emphasis added). Plainly, *Murphy* does not address, or have any bearing on, the subject of quasi-judicial immunity. Even with respect to witness immunity, *Murphy* is limited in its scope to *privately* retained testifying experts.[18] *Id. Murphy* is not relevant to determining whether the common law doctrine of quasi-judicial immunity should be extended to Dr. Reid, a court-appointed independent expert charged with assisting the family court with its judicial fact-finding functions.

Finally, in an effort to block extension of quasi-judicial immunity to Dr. Reid, Tolu relies on *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327 (Mo. banc 2011), to argue that Dr. Reid owed Tolu a duty of care. In *Devitre*, a defendant in an automobile accident case "requested that [the injured plaintiff] have an independent medical evaluation conducted by [a named doctor] pursuant to Rule 60.01(a) to assess his injuries allegedly arising from the automobile accident." *Id.* at 329-30. The plaintiff consented to the exam. *Id.* at 330. The plaintiff later filed an action for assault and battery against the physician and the health care facility where the examination was performed, claiming that in the

---

[18]In Tolu's Brief, she claims that *Murphy* "held that a 'court-appointed' or 'privately retained expert' may be sued for negligence in performing their litigation related services." She cites to page 679 of *Murphy* to support her reference to "court-appointed" experts. This is grossly misleading. At that page, the Supreme Court summarized the holding in a New Jersey case where an action was brought "against a court-appointed accountant and accounting firm for negligence in valuing a business asset to be divided in a divorce proceeding." *Murphy*, 841 S.W.2d at 679 (citing *Levine v. Wiss & Co.*, 478 A.2d 397 (N.J. 1984)). *Murphy* observed that *Wiss* rejected the accounting experts' argument that they were protected by quasi-judicial immunity as a court-appointed arbitrator because the court "found that the defendants served pursuant to an agreement between the parties merely approved by the court," and were engaged by the parties to act as compensated appraisers, and not appointed by the court as an "arbitrator" as the accounting experts claimed. *Id.* (citing *Wiss*, 478 A.2d at 400). The Supreme Court's summarization of the holding in *Wiss* does not permit a conclusion that *Murphy* authorizes "court-appointed" experts to be sued for negligence in performing litigation related services.

31

course of the examination, the physician injured him by over rotating his shoulder. *Id.* The physician moved to dismiss because the plaintiff failed to file a health care affidavit. *Id.* The plaintiff argued that he had no obligation to file a health care affidavit because he was never a patient of the physician. *Id.*

Our Supreme Court concluded that a Rule 60.01(a) "independent medical examination is a health care service," and that a medical professional who performs an independent medical examination has a patient relationship with the person for whom the examination is performed. *Id.* at 333. As such, a medical professional who "only provides an independent medical examination but does not treat the examinee 'has a limited physician-patient relationship with the examinee that gives rise to limited duties to exercise professional care.'" *Id.* at 332 (quoting *Dyer v. Trachtman*, 679 N.W.2d 311, 314 (Mich. 2004)).

The Supreme Court did *not* address the doctrine of quasi-judicial immunity in *Devitre*. It had no reason to, as the physician who performed the Rule 60.01 independent medical examination was *not* court-appointed to serve a judicial fact-finding function as the court's expert. Instead, the physician in *Devitre* was *privately retained* to serve as an expert witness for one of the parties. That is consistent with the recognized purpose of Rule 60.01 to "provid[e] for medical examinations in actions involving the physical [or mental] condition of a party [] to eliminate uncertainty concerning the medical aspects of the cause and to permit the preparation of an intelligent and informed defense." *Ratcliff v. Sprint Mo., Inc.*, 261 S.W.3d 534, 552-53 (Mo. App. W.D. 2008) (quoting *State ex rel. C.S. v. Dowd*, 923 S.W.2d 444, 447 (Mo. App. E.D. 1996)); *see also Jensen v. Wallace*, 671

32

S.W.2d 331, 333 (Mo. App. W.D. 1984) (observing that a Rule 60.01 independent medical examination is essentially "part of the discovery process"). *Devitre* is thus not relevant to determining whether quasi-judicial immunity should be extended to Dr. Reid. Though Dr. Reid was appointed by the family court in purported reliance on Rule 60.01 (the propriety of which we discuss, *infra*), he was not an expert witness privately retained by one of the parties, and was instead appointed to serve as the family court's expert to conduct independent psychological evaluations, and to make findings and recommendations to assist the family court in its judicial fact-finding function.

In any event, Tolu's contention that *Devitre* requires us to conclude that Dr. Reid owed her a limited duty of care misses the mark. The issue in this case is not whether Dr. Reid owed Tolu a limited duty of care as an independent medical examiner appointed by the family court in purported reliance on Rule 60.01.[19] Rather, even assuming Dr. Reid owed Tolu a limited duty of care as a court-appointed independent evaluator, the issue is whether Dr. Reid is nonetheless protected from civil liability for an alleged breach of that duty by the doctrine of quasi-judicial immunity. *See Bird,* 864 S.W.2d at 385 (analogously recognizing that "the guardian[] [ad litem's] principal allegiance is to the court. Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client").

In summary, based on the functional analysis employed in *Bird,* there is no reasoned basis to differentiate between guardians ad litem and court-appointed independent

[19]Because it is irrelevant whether Dr. Reid owed Tolu a limited duty of care as suggested by *Devitre,* 349 S.W.3d at 332, we need not address whether the provision in the Psychological Evaluation Order stating that no patient relationship existed between Dr. Reid and the parties he was directed to evaluate is controlling.

psychological evaluators with respect to extending the common law doctrine of quasi-judicial immunity. Both are appointed to provide neutral assistance in connection with a court's judicial fact-finding function. Regardless of their professional duties, both owe their principal allegiance to the court, and the policy rationale underlying quasi-judicial immunity is served by extending absolute immunity from civil liability to both for acts within the scope of their expressly assigned judicial functions. Because Dr. Reid's court-appointed duties were integrally related to the family court's judicial fact-finding function, it would seemingly follow that Dr. Reid is entitled to quasi-judicial immunity from civil liability for actions with the scope of his judicial functions.

However, we stop short of holding that quasi-judicial immunity extends to court-appointed independent psychological evaluators in child custody proceedings as a matter of law. In *Bird*, this Court emphasized that guardians ad litem are authorized, even required, to be appointed in child custody proceedings by statute. 864 S.W.2d at 385-86. Because *Bird* attached significance to the fact that the court's appointment of a guardian ad litem is statutorily authorized or required, we necessarily examine whether the family court's Psychological Evaluation Order was authorized by rule or statute, and if not, the effect on extension of quasi-judicial immunity to Dr. Reid.

**ii.**

*Though a functional analysis supports extending quasi-judicial immunity to court-appointed psychological evaluators in concept, the family court was not authorized by rule or statute to appoint Dr. Reid as the family court's independent mental health expert in the child custody modification proceeding*

34

"A court cannot abdicate or delegate, in whole or in part, its judicial power." *Aubuchon v. Hale*, 384 S.W.3d 217, 223 (Mo. App. E.D. 2012) (citation omitted); *see also Country Club of the Ozarks, LLC v. CCO Inv., LLC*, 338 S.W.3d 325, 329 (Mo. App. S.D. 2011). A court's nondelegable judicial powers include the "power to hear cases, decide disputed issues of fact and law, enter a judgment in accordance with the facts and the law, and enforce its judgment." 16A Am. Jur. 2d *Constitutional Law* section 311. Substantial sensitivity must therefore attach to consideration of a court's authority to delegate functions that are, by their nature, inherently related to nondelegable judicial powers.

Child custody disputes afford an example of this sensitivity. A "trial court derives its authority to determine child custody and visitation from statute." *Clark v. Clark*, 568 S.W.3d 920, 922 (Mo. App. S.D. 2019) (citation omitted). A "trial court 'has a special obligation in orders pertaining to custody of minor children and must act upon evidence adduced.'" *Id.* at 923 (quoting *Aubuchon*, 384 S.W.3d at 223). Yet, guardians ad litem are, as acknowledged by *Bird*, expected to "investigate and present [their] perspective to the trial judge, thereby enabling the court to render a decision in accordance with the statutory standard of 'best interests of the child.'" 864 S.W.2d at 385 (citation omitted). A "court is not bound by the opinion or recommendation of the guardian ad litem." *Id.* Still, the guardian ad litem's "principal allegiance [] to the court" lends itself to potential abuse should guardian ad litem recommendations cross a blurry line into a trial court's nondelegable duty to decide contested issues. *See id.*

We believe it of no coincidence, therefore, that the appointment of guardians ad litem is subject to the authorization expressly extended to trial courts by sections 452.423

and 210.160. *See Bird*, 864 S.W.2d at 385-86 (noting that sections 452.423 and 210.160 address a court's authority to appoint and monitor the performance of guardians ad litem, and support "extension of quasi-judicial immunity to **statutorily mandated** guardians ad litem in child custody proceedings," and noting that absolute immunity protects "the guardian's independence which serves as the cornerstone of Missouri's statutory scheme" (emphasis added)). Somewhat analogously, it is significant that Rule 68.01 serves as the source of a trial court's authority to appoint a master to serve as a fact-finder and to recommend dispositions with respect to referred matters, subject to the obligation to prepare a report which may (but need not) be adopted by the appointing court. But because the referral of matters to a master comes dangerously close to delegating nondelegable judicial powers, Rule 68.01(b) directs that "[a] reference to a master shall be the exception and not the rule." *See, e.g., S.K.B. v. J.C.B.*, 867 S.W.2d 651, 658 (Mo. App. W.D. 1993) (where the appointment of a master pursuant to Rule 68.01 in connection with child custody issues was held to be erroneous because the case did not involve exceptional circumstances). And even where exceptional circumstances are shown, decisional law emphasizes that although a trial court is authorized by Rule 68.01 to "appoint a special master to aid a judge in specific duties," a "court cannot [] 'delegate or abdicate, in whole or in part, its judicial power.'" *Country Club of the Ozarks*, 338 S.W.3d at 329 (quoting *D'Agostino v. D'Agostino*, 54 S.W.3d 191, 200 (Mo. App. W.D. 2001)).

We are aware of no statute or rule that authorizes a trial court to appoint a psychiatrist or psychologist to serve as the court's independent mental health expert in dissolution or child custody proceedings. In sharp contrast, in criminal proceedings,

36

section 552.020.2 provides that "[w]henever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, the judge shall . . . appoint one or more private psychiatrists or psychologists . . . to examine the accused."[20] Similarly, section 475.075.6, permits a trial court in a proceeding addressing the capacity or disability of a potential ward or protectee to "direct that the respondent be examined by a physician, licensed psychologist, or other appropriate professional," and section 475.075.7 provides that this court appointed professional "shall submit a report in writing to the court and to counsel for all parties." There is no corollary to sections 552.020.2 or 475.075.6 applicable to dissolution or child custody proceedings.

Here, the Psychological Evaluation Order appointing Dr. Reid was purportedly entered "[p]ursuant to Rule 60.01." We question the family court's reliance on Rule 60.01 to appoint *its own expert* to conduct independent psychological evaluations.

Rule 60.01(a)(1) provides that "[i]n an action in which the mental condition . . . of a party, or of . . . a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party (i) to submit to physical, mental, or blood examinations by physicians or other appropriate licensed health care providers or (ii) to produce for such examinations such party's agent or the person in

---

[20]Independent psychological evaluators appointed by a court pursuant to section 552.020 have been held to be entitled to quasi-judicial immunity. *See Moses*, 813 F.2d at 892 (psychiatrist appointed by court to conduct competency examination in a criminal case performed functions essential to the judicial process and was entitled to quasi-judicial immunity); *Miner*, 638 F. Supp. at 240-41 (psychiatrist appointed by court pursuant to sections 552.020 and 552.030 to conduct pretrial evaluation and examination of criminal defendant "enjoys absolute immunity in his performance of the quasi-judicial function of court-appointed psychiatrist").

37

such party's custody or legal control." However, Rule 60.01(a)(3) provides, in pertinent part, as follows:

> Any order under this Rule 60.01(a) may be made *only on motion for good cause shown*, upon notice to the person against whom the order is sought and to all other parties.

(Emphasis added.) The necessity of a motion as an express condition to entry of a Rule 60.01(a) order is consistent with the fact that Rule 60.01 is an authorized means for conducting discovery whereby one party asks another party to submit to a physical or mental examination by a privately retained expert. *Jensen*, 671 S.W.2d at 333 (noting that Rule 60.01 is essentially a part of the discovery process). This conclusion is reinforced by section 510.040, which similarly provides that:

> In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending *may order him to submit to a physical or mental examination by a physician, chosen by the party requesting the examination.* The *order may be made only on motion* for good cause shown and upon notice to the party to be examined. . . . *Such physician shall be deemed the witness of the party procuring the examination* unless called as a witness in court by the opposing party. . . .

(Emphasis added.) Neither Rule 60.01(a)(3) nor section 510.040 contemplate, or authorize a court to enter, an order requiring a party to submit to a physical or mental examination conducted by someone who will be serving as the court's independent fact-finding expert.

The family court's Psychological Evaluation Order did not grant any pending Rule 60.01(a)(3) motion, and did not require submission to a psychological evaluation with Dr. Reid in his capacity as a retained expert (and thus witness) for another party.[21] Instead, the

---

[21] Tolu alleged in her amended petition that Stientjes asked the family court to appoint Dr. Reid to evaluate Tolu; that Tolu asked the family court to require Stientjes and the Children to be evaluated; and that Pudlowski asked the family court to appoint Dr. Reid to evaluate all of the parties. Accepting these factual assertions as true,

38

Psychological Evaluation Order ordered all of the parties to submit to psychological evaluations with Dr. Reid as the family court's *independent* forensic psychologist, and directed Dr. Reid to prepare a report for the purpose of assisting the family court in its fact-finding role on the issue of the best interest of the Children. The Psychological Evaluation Order was not authorized by Rule 60.01(a), or by its corollary, section 510.040. *See State v. Wagner*, 504 S.W.3d 899, 902-03 (Mo. App. W.D. 2016) (holding that the plain language of Rule 60.01 and section 510.040 do not authorize a trial judge to order, on its own accord, a mental examination conducted by a mental health expert that will be reporting his findings to the court).[22]

However, no one, Tolu included, challenged the family court's authority to appoint an independent psychological evaluator pursuant to Rule 60.01(a) in the child custody

---

each of these requests was at best a Rule 60.01(a)(3) motion that, if granted, would have resulted in an order directing the requested party to submit to an examination by the movant's privately retained expert. As we have explained, the Psychological Evaluation Order did not grant any of the "motions" described in Tolu's amended petition; did not order any party to submit to evaluation by another party's privately retained expert; and instead ordered all parties to submit to evaluation by Dr. Reid as the court's independent expert to assist the court in its judicial fact-finding function, with Tolu and Stientjes court-ordered to split the cost for Dr. Reid's services.

[22] *Bird* could not have anticipated the family court's Psychological Evaluation Order, but presciently underscored that a family court is not authorized by Rule 60.01 to appoint its own fact-finding psychological expert in a child custody proceeding when it held:

> [T]he guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. *Unhampered by the ex parte and other restrictions that prevent the court from conducting its own investigation of the facts,* the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision--*i.e.*, the "best interests of the child."

864 S.W.2d at 384 (emphasis added). Had the family court granted the motion Tolu claims Pudlowski filed, which sought to appoint Dr. Reid to conduct forensic psychological evaluations of the parties, then, as herein explained, Dr. Reid would have been *Pudlowski's* Rule 60.01 expert--not the family court's independent expert. That is not what happened, however. We therefore need not address, as the issue is not before us, whether a guardian ad litem's quasi-judicial immunity extends to psychological evaluators retained by the guardian ad litem to conduct Rule 60.01 forensic evaluations for the purpose of assisting the guardian ad litem in the "essential function[] [to act] as the court's investigative agent." *Id.*

modification proceeding.[23] In fact, the Psychological Evaluation Order was signed by Tolu, Stientjes, their counsel, and Pudlowski, reflecting agreement to either the form, or the substance, of the Order. Whatever effect, if any, these signatures had on the family court's "authority" to enter the Psychological Evaluation Order, for reasons we explain, *infra*, Dr. Reid is nonetheless entitled to quasi-judicial immunity for his court-appointed judicial functions.

### iii.

### *Dr. Reid is protected by quasi-judicial immunity even though his appointment as the family court's independent mental health expert was not authorized by rule or statute*

Though the family court was not authorized to appoint Dr. Reid as its independent mental health expert pursuant to Rule 60.01 or section 510.040, the family court nonetheless acted within its jurisdiction (and may well have had the parties' consent) when it did so, requiring the conclusion that its unauthorized action is protected by judicial immunity. *Stalnacker*, 631 S.W.3d at 661-62 (holding that judicial immunity applies if a judge has acted without authority so long as the judge is acting within his or her subject matter jurisdiction). That same protection necessarily extends to Dr. Reid. The grant (or extension) of quasi-judicial immunity to someone ordered by the court to perform a judicial function is "essential if the court's authority and ability to function are to remain uncompromised." *White v. Camden Cty. Sheriff's Dept.*, 106 S.W.3d 626, 633 (Mo. App. S.D. 2003) (quotation omitted). "[I]t is simply unfair to spare the judges who give orders

---

[23]More to the point, this appeal has not been taken from the child custody modification proceeding, and has instead been taken from the dismissal of Tolu's later filed civil action seeking damages from Pudlowski, Dr. Reid and Van Luven for services provided in connection with the child custody modification proceeding.

while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a 'lightening rod for harassing litigation aimed at judicial orders.'" *Id.* (quoting *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1288-89 (10th Cir. 1989)).

We thus find that conduct in the nature of a judicial function,[24] performed in compliance with a facially valid court order, is entitled to quasi-judicial immunity, as "[t]o hold otherwise would require . . . court officers enforcing facially valid orders 'to act as pseudo-appellate courts scrutinizing the orders of judges.' Such a result is 'obviously untenable.'" *Id.* (quoting *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996)). Because the unchallenged Psychological Evaluation Order delegated judicial functions to Dr. Reid by directing him to conduct independent psychological evaluations in a child custody matter and to report his findings to the family court, Dr. Reid is protected from civil liability in the performance of his court ordered judicial functions by the quasi-judicial immunity doctrine, even though his appointment as the family court's independent expert was not authorized by Rule 60.01 or by section 510.040.

#### iv.

#### *Dr. Reid's actions were within the scope of his official duties*

---

[24]Importantly, conduct that does not constitute the exercise of "judicial business," even if performed ancillary to, or as a by-product of, a facially valid court order, is not entitled to quasi-judicial immunity. *White v. Camden Cty. Sheriff's Dept.*, 106 S.W.3d 626, 633-34 (Mo. App. S.D. 2003) (holding that sheriff who applied for an equitable share of forfeiture proceeds after trial court's order to transfer property to a federal agency had been performed was not engaged in "judicial business," such that the "reasoning for applying judicial immunity . . . does not apply").

41

That brings us to the second argument raised by Tolu's second point on appeal, which is whether Dr. Reid "acted outside the scope of any quasi-judicial immunity . . . when he violated three [court orders] and destroyed, altered, and concealed evidence." In the argument portion of her Brief, Tolu more specifically alleges that Dr. Reid exceeded the scope of his official duties because he "violated the standard of care for forensic psychologists rendering evaluations" in family court. Tolu then identifies numerous examples of how she contends Dr. Reid violated the standard of care.[25] Even accepting these allegations (to the extent they are factual) as true, all of Tolu's assertions arise from Dr. Reid's role as a court appointed forensic evaluator. Immunizing individuals who are performing judicial functions from complaints that they did not perform those functions well is precisely the purpose of quasi-judicial immunity. *Bird*, 864 S.W.2d at 382 (holding that quasi-judicial immunity applies to performance of judicial functions by those who are not judges where "conduct of . . . official duties may adversely affect a wide variety of individuals, each of whom may be a potential source of future controversy," in order "to forestall an atmosphere of intimidation that would conflict with their resolve to perform their functions in a principled fashion"). We reject Tolu's arguments that by conducting his psychological evaluations in a manner that violated the standard of care, Dr. Reid

---

[25]Tolu alleges that Dr. Reid: grossly misrepresented test results; failed to provide an acculturation measure to account for the fact Tolu was born and raised in Russia; admitted that his report was subjective; failed to investigate reports of Stientjes's sexual, physical and domestic violence; failed to investigate Stientjes's poor moral character; failed to use standard methodology; did not seek peer review; misdiagnosed Tolu; altered audio recordings of interviews and deleted or destroyed video recordings; and misrepresented objective testing data revealing Stientjes's personality disorders.

exceeded the scope of his official duties, and thus the parameters of the protective cloak of quasi-judicial immunity.

Tolu also argues that Dr. Reid violated the family court's May 25, 2018 and August 3, 2018 orders requiring Dr. Reid to "produce his complete and unaltered file." Tolu summarily states, without analysis or citation to authority, that by violating court orders regarding the production of "his complete and unaltered file," Dr. Reid "acted outside the scope of his duties leaving him without . . . immunity."[26] Even accepting Tolu's factual allegations as true, bad faith or malicious conduct does not negate quasi-judicial immunity. *See, e.g., Moses*, 813 F.2d at 893 (allegations of conspiracy to find a criminal defendant competent to testify do not defeat absolute immunity afforded by quasi-judicial immunity (citing *Pierson*, 386 U.S. at 553-54 (observing that malicious or corrupt acts are protected by absolute immunity provided by judicial immunity))). Instead, "the need to preserve [a] judge's independence requires a grant of absolute immunity. The same policy [applies] to [] a court appointed psychiatrist. . . . " *Id.* Dr. Reid's obligation to retain, maintain, and deliver records related to the psychological evaluations he was court ordered to perform are within the scope of Dr. Reid's court appointed judicial functions. If Dr. Reid failed to abide by his court ordered directives, he was subject to accountability by other means.[27]

---

[26]Tolu's citation to *Hale v. Cottrell, Inc.*, 456 S.W.3d 481 (Mo. App. W.D. 2014) lends no support for the proposition that quasi-judicial immunity is negated if the individual performing a judicial function then fails to produce their entire file for scrutiny, even when ordered by the court. In *Hale*, we affirmed an award of sanctions where a party concealed "certain medical records as part of a scheme to preclude the defense from challenging the nature and extent of claimed injuries," and that the concealment constitutes a fraud on the court and an example of bad faith conduct. *Id.* at 491. But, *Hale* did not address immunities, or the effect of bad faith conduct in the performance of official duties otherwise protected by quasi-judicial immunity.

[27]*See Bird*, 864 S.W.2d at 386 (noting that guardian ad litem remains subject to applicable rules of professional conduct; court supervision; and trial court's inherent ability to "not be bound by" or to "modify or reject the guardian's recommendations as it deems appropriate"). In addition, "[p]arents may advocate positions contrary

43

But, his alleged failures, even if intentional, malicious, or in bad faith, do not alter the fact that his actions were within the scope of his official duties and are protected from civil liability by the doctrine of quasi-judicial immunity.

Dr. Reid is absolutely immune from civil liability for the conduct alleged in Tolu's petition. The trial court's dismissal of Count I of the amended petition on the basis of quasi-judicial immunity is affirmed. Tolu's Point Two is denied.

**V.**

### *Count II of the amended petition was also properly dismissed based on the doctrine of quasi-judicial immunity*

The Judgment dismissed Count II of the amended petition (breach of contract) because "it is clear from the face of the petition that [Tolu] did not bargain for any services with Dr. Reid and Dr. Reid did not obligate himself to provide any services to [Tolu]," in part because the SOU plainly stated that "the court is to be considered the client of Dr. Reid in this contract for his independent professional judgments." Alternatively, the Judgment dismissed Count II because the amended petition alleged that Dr. Reid had an obligation "to act within the standard of care of a forensic psychologist," a claim that sounds in malpractice, and not in contract, and that is thus duplicative of Count I, already dismissed on the basis of quasi-judicial immunity. In other words, the trial court found that although Tolu signed the SOU and Informed Assent, those documents did not constitute a "contract"

___

to the guardian and all determinations of the reviewing court are subject to judicial review." *Id.* The same, or similar, safeguards are in place for court-appointed psychologists charged with conducting independent evaluations and reporting findings to the court. "[A]ny marginal improvement in the accountability of [a non-judicial officer entitled to quasi-judicial immunity] that would arguably be advanced by permitting civil liability is far outweighed by the adverse impact on the [person's] independence. . . ." *Id.*

44

for bargained for services, a conclusion that is consistent with the fact that the Psychological Evaluation Order required Dr. Reid to give Tolu and Stientjes "a written explanation of the evaluation process and . . . a written explanation of [his] fee policies." And even assuming the SOU and Informed Assent were contracts for bargained for services, the trial court found the allegations in Tolu's breach of contract claim were indistinguishable from her claim for malpractice, rendering both claims subject to dismissal on the basis of quasi-judicial immunity.

Tolu's third point on appeal argues that dismissal of claims against Dr. Reid was error because Dr. Reid "is liable for the breach of his contracts with [Tolu] for the reason that [the] SOU and [Informed Assent] provided a separate basis for [Tolu's] claims." This claim of error responds only to the trial court's second basis for dismissing Count II of the amended petition. The point relied on does not address the trial court's finding that the SOU and Informed Assent were not contracts for bargained for services that would support a claim for breach of contract. Tolu's failure to challenge this independent basis for dismissing Count II of the amended petition against Dr. Reid is fatal to her appeal. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that "failure to properly challenge a finding and ruling of the trial court that would support its judgment" is fatal to appeal, as an appellant has the burden "to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law" (citations omitted)). Though the first line in the argument portion of Tolu's Brief addressing this point relied on alleges that the trial court "incorrectly found that [Tolu] did not bargain for any contractual services from [Dr.] Reid," that argument exceeds the scope

45

of the point relied on, preserving nothing for our review. *See KDW Staffing, LLC, v. Grove Const., LLC*, 584 S.W.3d 833, 837 (Mo. App. W.D. 2019) (holding that an appellant's preserved argument is limited to only those errors asserted in the points relied on); *Gaar v. Gaar's Inc.*, 994 S.W.2d 612, 616 (Mo. App. S.D. 1999) (holding that our courts "adhere[] to the well-entrenched doctrine that the questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned").

Even if Tolu could overcome this preservation hurdle, we would otherwise find her bare assertion that she bargained for services with Dr. Reid to be an undeveloped, conclusory statement that preserves nothing for appellate review. *Hiner v. Hiner*, 573 S.W.3d 732, 736 (Mo. App. W.D. 2019) ("Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." (quotation omitted)). "When an appellant fails to support contentions with relevant law and analysis beyond conclusory statements, we deem the [argument] abandoned." *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018).

With respect to the claim of error that *is* captured in Tolu's point relied on, we agree with the trial court that Count II of the amended petition is duplicative of the malpractice claim asserted in Count I. This conclusion is demonstrated by Tolu's Brief where she alleges that Dr. Reid "breached" the SOU and Informed Assent by violating the standard of care when he produced a subjective evaluation though he promised an objective and impartial evaluation; when he misrepresented his psychological testing; and when he refused to provide his complete file. These same allegations were made in connection with Count I, the claim for breach of the standard of care. This is not a case, as Tolu alleges, of

46

pleading alternative theories of recovery.[28] Instead, as the trial court correctly found, Counts I and II were essentially duplicative theories, as each relied on a claim that Dr. Reid violated the standard of care. *See Klemme v. Best*, 941 S.W.2d 493, 496 (Mo. banc 1997) (holding analogously that if an alleged breach of fiduciary duty can be characterized as both a breach of the standard of care (negligence) and a breach of fiduciary duty, a plaintiff's sole claim is for malpractice); *King Gen. Contractors, Inc. v. Reorganized Church*, 821 S.W.2d 495, 501 (Mo. banc 1991) (holding that "[s]eparate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief'" (quoting *Siesta Manor, Inc. v. Cmty. Fed. Sav. & Loan Ass'n*, 716 S.W.2d 835, 839 (Mo. App. E.D. 1986))).

Tolu has not preserved a claim of error challenging the trial court's dismissal of Count II of the amended petition on the basis that no contract was formed with Dr. Reid. And Tolu has not persuasively challenged the trial court's dismissal of Count II of the amended petition on the alternative basis that it was duplicative of the malpractice claim asserted in Count I, and thus also subject to dismissal on the basis of quasi-judicial

---

[28]Tolu's reliance on *Hoover v. Mercy Health*, 408 S.W.3d 140 (Mo. banc 2013) for the proposition that a healthcare provider can be sued for breach of contract is of no aid to Tolu. *Hoover* involved a situation where a patient claimed to have been double billed for goods and services. *Id.* at 142. No assertion involving a breach of the standard of care was at issue in the case. Similarly, Tolu's reliance on *Breeden v. Hueser*, 273 S.W.3d 1 (Mo. App. W.D. 2008) is misplaced, as the case holds, in direct opposition to Tolu's contention that she can plead malpractice claims in the alternative, that "an action that arises out of a doctor's malpractice or negligence in providing health care cannot avoid the application of section 516.105 [the statute of limitations for medical negligence claims] merely because it is pled as a claim for fraud, misrepresentation, or breach of contract." *Id.* at 7. Finally, Tolu's reliance on *Simonson v. Schaefer*, 301 P.3d 413 (Okla. 2013) is unpersuasive, as in that case, no claim was asserted for malpractice, and instead a parent in a custody action sued to recover from a court-appointed psychologist the amount paid by the parent for a report the psychologist never prepared.

47

immunity. We affirm the trial court's dismissal of Count II of the amended petition against Dr. Reid. Tolu's Point Three is denied.

## C.

**We need not determine whether the claims against Van Luven were appropriately dismissed based on the doctrine of quasi-judicial immunity because the claims were appropriately dismissed on another basis raised in Van Luven's motion to dismiss and relied on by the Judgment**

In Tolu's fourth point on appeal, Tolu argues that it was error to dismiss claims against Van Luven because she "is not immune from suit for breach of the standard of care for a treating therapist, even if court appointed, for the reason that Missouri law does not immunize therapists from their violations of the standard of care." In Tolu's fifth point on appeal, Tolu argues that it was error to dismiss claims against Van Luven because she "is not immune from suit for breach of her fiduciary duty, even if court appointed, for the reason that Missouri law does not immunize therapists from releasing a person's PHI without authorization from the court or the patient." Collectively, these points on appeal argue that it was error to dismiss Tolu's claims against Van Luven because a treating therapist is not entitled to quasi-judicial immunity, and because in any event, the unauthorized release of PHI exceeds the scope of the immunity.

Jurisdictions that have addressed whether the common law doctrine of quasi-judicial immunity should be extended to court-appointed *treating* psychologists or therapists are not in agreement on the subject, with some concluding that treating psychologists or therapists (as opposed to independent psychological or psychiatric evaluators) perform a

48

remedial function for one or more parties, and not an independent judicial fact-finding function for the court.[29] We need not address whether the common law doctrine of quasi-judicial immunity should be extended to court-appointed or ordered treating psychologists or therapists in Missouri. As a result, we need not address whether Van Luven exceeded the scope of the immunity by disclosing Tolu's PHI. That is because Tolu's fourth and fifth points on appeal fail to challenge the trial court's alternative finding that regardless of whether quasi-judicial immunity extends to Van Luven, "[t]he Court orders appointing Van Luven to provide reunification counseling for the children clearly establish that [Tolu] was not [] Van Luven's client or patient. [Tolu] has not alleged any facts that support the finding of a fiduciary relationship." *See Klemme*, 941 S.W.2d at 495-96 (holding that claims of malpractice and breach of fiduciary duty require evidence of the existence of a client relationship). Tolu's failure to challenge this independent basis for dismissing her claims against Van Luven is fatal to her appeal. *STRCUE, Inc.*, 386 S.W.3d at 219.

In the argument portion of her Brief addressing Point Four, Tolu states that she "pled abundant facts establishing that she was Van Luven's patient," and cites to paragraphs 183

---

[29] *Compare John v. Faitak*, 594 S.W.3d 871, 874 (Ark. 2020) (quasi-judicial immunity extends to a court-appointed psychologist directed to conduct neutral psychological evaluation, but does not protect therapeutic relationship that was entered into in excess of the court's order); *Diehl*, 618 N.W.2d at 90 n.3 (noting that psychologist appointed by court as a fact finder was entitled to quasi-judicial immunity, and distinguishing "a psychologist who is appointed by the court to render treatment to a party or individual, a remedial function arguably unrelated to the fact-finding and decision making processes of the court"); *Estape v. Seidman*, 269 So. 3d 565, 569-70 (Fla. Dist. Ct. App. 2019) (addressing litigation privilege and not quasi-judicial immunity, but noting court's designation of a treating therapist is different from court appointment of an expert to assist in evaluating custody or other matters in a dissolution proceeding); *Awai v. Kotin*, 872 P.2d 1332, 1336 (Colo. App. 1993) (holding that court-appointed treating therapist was not entitled to quasi-judicial immunity as "treatment, unlike reports or evaluations and recommendations, is not intimately related and essential to the judicial decision-making process," and is instead "a separate remedial function"); *with Doe v. Hennepin Cty.*, 623 F. Supp. 982, 986 (D. Minn. 1985) (holding that court-appointed treating therapists are entitled to absolute immunity for acts committed within the scope of their appointment); *Chambers v. Stern*, 994 S.W.2d 463, 466 (Ark. 1999) (holding that even though a treating therapist serves a different role than an independent evaluator, public policy concerns mandate extending quasi-judicial immunity to both).

through 246 of the amended petition. This argument exceeds the scope of Tolu's point relied on, which alleges only that quasi-judicial immunity does not extend to a court-appointed treating therapist, and preserves nothing for our review. *See KDW Staffing, LLC,* 584 S.W.3d at 837; *Gaar,* 994 S.W.2d at 616.

Regardless, we do not agree with Tolu's characterization of the allegations in her amended petition. The extent of court ordered and authorized therapy for the parties was expressly covered in the family court's order dated September 17, 2018, attached as Exhibit 12 to the amended petition. That order specifies that:

- Child T and Child A "shall continue to work on reestablishing their relationship by continuing to meet with [Van Luven] for joint therapy;

- Child A and Tolu "shall begin therapy" with either Churcharillo or Ottolini, to be determined by Pudlowski in her role as GAL;

- Child T and Stientjes "shall begin therapy" with either Churcharillo or Ottolini, to be determined by Pudlowski in her role as GAL;

- The goal of "the above listed therapy is primarily to focus on reestablishing the relationship between [Child T] and [Child A]; the secondary goal is to reestablish the relationships between the children and the parents";

- "[Child T] shall continue to meet with Meg Meyers at Safe Connections; [Child A] shall continue to meet with Nancy Messey";

- "[Tolu] shall continue to meet with Jessica Boyd at Safe Connections. [Stientjes] shall continue to meet with Nancy Messey"; and

- "All parties are to sign releases to allow GAL to speak w/ all necessary therapists and therapists to speak w/ each other."

The family court unambiguously specified the court ordered and authorized therapeutic relationships for the parties. There is nothing in the family court's order permitting a

50

finding that Tolu was Van Luven's patient. Tolu's generalized assertions in the amended petition that she thought she was Van Luven's patient, and that Van Luven never told Tolu she was not Van Luven's patient, do not establish that Tolu was Van Luven's patient. Instead, Exhibit 12 to the amended petition establishes to the contrary. *See* Rule 55.12 (providing that "[a]n exhibit to a pleading is a part thereof for all purposes"). "[A] [therapist]/patient relationship is essential to a malpractice claim." *Meekins v. St. John's Regional Health Ctr., Inc.*, 149 S.W.3d 525, 532 (Mo. App. S.D. 2004) (citing *Millard v. Corrado*, 14 S.W.3d 42, 49 (Mo. App. E.D. 1999)).

The trial court's dismissal of Counts IV and V of the amended petition against Van Luven is affirmed. Tolu's Points Four and Five on appeal are denied.

## VI.

### The MMPA claim against Pudlowski, Dr. Reid, and Van Luven was properly dismissed

Tolu's sixth point on appeal challenges the trial court's dismissal of Count VI of the amended petition which purported to state a claim for violation of the MMPA. Specifically, Tolu's sixth point on appeal argues that the trial court erred in dismissing the MMPA claim "against Pudlowski, [Dr.] Reid and Van Luven . . . because the MMPA applies to all unfair, deceptive, and fraudulent conduct for the reason that it extends to litigation support professionals like Pudlowski, Reid and Van Luven."

Tolu's argument developing this point on appeal is limited to challenging the trial court's finding "that Pudlowski, Reid and Van Luven were not liable under the MMPA

51

because their unlawful practices did not cause [Tolu] to hire them." Tolu is correct that the

trial court concluded in the Judgment that:

> [Tolu] does not allege that the Defendants' unlawful practices caused her to
> enter into the transactions at issue. In fact, she alleges she was ordered by
> the Court to use the Defendants' services.

In effect, the trial court found that Tolu did not establish that she entered into a transaction

to purchase merchandise or services from Pudlowski, Dr. Reid, or Van Luven. Based on

this finding, the trial court found that "the MMPA does not apply to [Tolu's] transactions

with Defendants and Count VI must be dismissed."

However, the trial court also dismissed Count VI of the amended petition because

it found that "[t]he 2020 Amendments to the MMPA, which were in affect [sic] when

[Tolu] filed her initial Petition in this matter, specifically prohibit plaintiffs from using the

MMPA as a vehicle to bring claims that should be filed under Missouri's malpractice

statute." Tolu has not challenged the trial court's conclusion that the 2020 amendments to

the MMPA preclude her claims against Dr. Reid and Van Luven, as those claims were

either express malpractice claims (Counts I and IV of the amended petition), or were claims

found by the trial court to be duplicative of asserted malpractice claims (Counts II and V

of the amended petition).[30] Tolu's failure to challenge this independent basis for the trial

---

[30] Consistent with the fact that Tolu's claims against Dr. Reid and Van Luven asserted in Counts I, II, IV and V of the amended petition were in the nature of malpractice claims, Tolu filed healthcare affidavits pursuant to section 538.225 confirming that she had obtained a written report by a legally qualified health professional stating that Dr. Reid and Van Luven failed to conform their conduct with the applicable standard of care. We express no opinion about the statutory sufficiency of these healthcare affidavits, but simply note that Tolu's filing of the affidavits underscores that her claims against Dr. Reid and Van Luven are the type the 2020 amendments to the MMPA intended to prohibit.

52

court's dismissal of the MMPA claims against Dr. Reid and Van Luven is fatal to her appeal.[31] *STRCUE, Inc.*, 386 S.W.3d at 219.

With respect to Pudlowski, Tolu has not persuasively challenged the trial court's finding that Tolu did not purchase merchandise or services from Pudlowski, and was instead involuntarily subjected to Pudlowski's court ordered services as guardian ad litem. "To prevail on a claim under the MMPA, a plaintiff must plead and prove he or she (1) purchased merchandise (which includes services) from [a] defendant[]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016) (citations omitted). "The term 'purchase,' for purposes of the MMPA, is not statutorily defined." *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 128 (Mo. App. E.D. 2009). "'Purchase' is defined in Webster's dictionary as meaning 'to obtain by paying money or its equivalent.'" *Id.* (quoting *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. App. E.D. 1984)). The essence of a purchase, therefore, is voluntarily undertaking to secure the receipt of goods or services *in exchange for* the payment of money.

Here, Tolu did not voluntarily seek out or secure Pudlowski's services in exchange for the payment of money. Instead, the family court appointed Pudlowski as the guardian ad litem by court order. Though Tolu and Stientjes were each ordered to deposit funds in the court registry to be later applied against Pudlowski's reasonably incurred costs and fees,

---

[31]Tolu has not challenged the trial court's retroactive application of the 2020 amendments to the MMPA to conduct predating the effective date of the amendments. We express no opinion on that subject.

the deposit of funds was not a condition to Pudlowski's appointment, or to performance of her court ordered services. The family court's order appointing Pudlowski as guardian ad litem does not contemplate or reflect the "purchase" of services by Tolu, at all, let alone for "personal, family or household purposes" for purposes of asserting an MMPA claim.

The trial court did not err in dismissing Count VI of the amended petition against Pudlowski, Dr. Reid, and Van Luven. Tolu's Point Six on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

Cynthia L. Martin, Judge

All concur.